We'll turn to our second case today, C.S. v. Crayton, 22-2118. Your Honor, this is a case that began with a traffic stop on I-10 at a board patrol checkpoint. C.S. Crayton was stopped on August 6, 2020, was asked several questions by a board patrol agent, Hunt. He answered correctly, and then Agent Hunt's guesses turned out to be correct, and I use the term guesses because I think that's where we went. This case was dealt with initially in a suppression that I didn't handle, and the result, and the answer that I probably lose on is credibility, and credibility was made in the lower court. The concern that I have with the issue I'd like to deal with first is Issue 3, Agent Armour was called to testify about drug keywords, and there are several things. I'm not challenging the designation. The government raised that. That's not what I'm calling it. Was there an objection at trial that Agent Armour was testifying beyond the scope of his designation? Your Honor, I think I irritated him. I would use the term the living daylights. I have judgements always with that. It's a familiar objection I have in drug cases in El Paso and other places because my brief starts out with, I can't call Pablo Escobar to testify about the counter-argument, and the issue here is that Agent Armour was called to testify about distribution, but the indictment and the jury charge both have 5 grams as a instruction in there. We're dealing with 47 grams. Not a lot of methamphetamine in our part of the country, but it still is there. Do you know a lot of people, was there any evidence that personal use possessors would have 47 grams? Your Honor, that was something that went back and forth, and that was a subject of cross, and there was a part that the government took issue where I said anecdotally. The government, all of Agent Armour's testimony was anecdotal. There is no, just because he has a badge and has been there. Oh, it's to get experience. Your Honor, I would equate that much to like an attorney. Just because I've been doing something for 13 or 20 years doesn't mean I know what I'm doing. And his, the footnote that the government used, because they're judges too, I should say. Your Honor, the footnote that... He didn't go there. Not by a million years, Your Honor. The footnote talks about a drunk and how much a drunk would buy and how much a drunk would go to the store to use, and it was on page 41 of the government's brief where you don't see people with severe drinking problems. They regularly, you know, buy a small amount of alcohol a day rather than buying in bulk. Rather than buying in bulk, and that was Agent Armour's response to whether somebody could buy methamphetamine and travel with it across the country in bulk or not in bulk. And so the problem though, Your Honor, is that his response to another question was it's very unusual to see drug users purchase ounce or two ounce quantities and then comes back and says it's consistent with distribution. It could be consistent with personal use. By the way, the drugs appear to be packaged in my opinion, and he goes through the four cell phones, the gun, and those kind of things. But those are not the subject of expert opinions, and he shoots himself. I think the government's use of him... Why not? I mean, you're talking about an agent who presumably has made lots of arrests of people who trafficked narcotics, and in his experience, and he probably made lots of arrests or encountered lots of people who had personal use quantities, in his opinion. And so after that experience, isn't he able to say, in my experience, it's indicative of trafficking for someone to have 47 grams, plus all these firearms, plus a large amount of cash on them, packaged in a certain way? The counter to that, Your Honor, is how do I challenge that? Because the opposite of that... With your own expert. I mean, surely there is someone out there who is a police officer who in their experience, if they disagree with that, or a retired cop or somebody who could say, I've seen lots of people who like to stock up on methamphetamine, and they'll buy 47 grams at once so they don't continue to have to go back to the street. Your Honor, that person is a convicted felon, and Rule 609 usually gets him out of there as well. No, I mean, it could be a law enforcement officer, it could be a counselor, it could be all kinds of people with information. In your honor, the position that we're taking is that under the expert rules, the proponent of the evidence, the United States, has to show that there's something more to this than just this anecdotal severe heavy drinking problem, and this is the theory that I'm running with. Because people don't do that. It could be, in your honor... How could they prove it, in your opinion? In your honor, I think that... Not that you want to give Ms. Stahl over there your secrets, but how could they prove it? Well, there are no secrets, your honor. The idea is the jury charge itself said five grams. We're nine times that at 45 grams. Agent Sterling Nixon got on the stand and talked about many things, almost, and I think almost word for word, the same things that Agent Armour got at. The issue that I have with Agent Armour's testimony was that it truly was anecdotal. Agent Nixon tied his to specific ideas, but Agent Armour was... The word I would use is charming, your honor. He came across, he testified very well. He was put on the stand, I believe... It's candy, your honor, is the word that keeps coming through my mind and what I believe I used with Judge Gonzales. And the issue is that we come back to, it's the proponent's burden, and Justice Katonji Brown had, in Timoho v. United States, a great quote that is, the naive assumption that prejudicial effects can be overcome by jury instructions, all practicing lawyers know to be unmitigated fiction. And I say that because with an expert, we get a jury charge. In this case, it was jury charge 16 that then said, you can... I don't want to draw a line on the jury charge, but it was a standard 10th Circuit jury charge saying that. You can listen to this and you can make your own opinions. He was providing expert opinion. The problem with that expert opinion is it, one, I don't believe was expert opinion. It was an individual's opinion. And so, it's... I'm assuming you got to have some fun with him on cross-examination? A lot, your honor. And exposed to the jury that he was just saying things, that what he was saying wasn't substantive in nature, but just basically pulling his opinion out of thin air? Your honor, the problem is that's the same, that's the opposite argument and exactly the reason why when I lose on a suppression, we have to come up with the judge-made credibility determination. Because we treat law enforcement officers different than we treat the individual who's cross-examining them. They have an inherent credibility that even cross-examination is not able to penetrate many times as well. But, I mean, that's your job, isn't it? If you get an officer up on the stand who's saying things that you think aren't supportable or, in fact, just dead wrong, your job is to discredit them so the jury won't believe them. I would agree with that, your honor. But the problem is that officer has been put up on there and allowed to testify, I believe, without the sufficient reason under 702 and 704, but he is now cloaked in expert agent armor is giving you his testimony on heavy drinking. And the problem is where he sits up on that stand providing that opinion. Well, the heavy drinking stuff, I mean, that wasn't something where beforehand you were aware that he was going to get up there and talk about that. That's something you elicited, right? That was undirect, your honor. Undirect, okay. That was undirect, but that was my elicit. I elicited some other testimony. It goes back and forth, but the issue is still he doesn't have any support, any reasons, anything other than the people that I believe, in my opinion, are users are these people. It is just pure opinion. But he backed that up. Of course, it is his opinion, but he was able to give an opinion because he backed it up with experience and having been involved in other situations where he was exposed to people trafficking narcotics. Your honor, I would have to look specifically at the record, but I believe one of my questions was can you provide specifics, and the answer is no, generally it is. And that's the concern, your honor, is that the cross-examination turns into this dance where agent, can you tell me specifically when you found an individual that you thought had personal distribution to this person? No, I can't. It is generally so. And it is this dance that we play, your honor. Did you, after he wouldn't tell you the basis for his opinions, ask the court to strike his testimony as improper expert opinion? Your honor, I believe I did, yes. Okay. And I believe I will get at least that concession without the United States, your honor. We'll find out. And regarding issues one and two, your honor, and that's the stop and ultimately the search of seizure-trafficked vehicle, he pulls into the checkpoint. Agent Hunt testifies that he asked two questions, and then there's the inconsistent travel plans that are provided. He's gripping the steering wheel nervously, and then Agent Hunt, within approximately 30 seconds, smells the odor of marijuana that he describes as being fresh marijuana. Judge Gonzales makes the factual determinations. I believe the challengeable issue is the fact that at the checkpoint, there was no probable cause to refer him over to secondary once he correctly answered those questions. Assuming that that is decided that that's not where they go. When did he consent to a further search by the officers? That was challenged, your honor, but that was in secondary. In the secondary? Yes, your honor. So he made no concession or an agreement for a dog or anything else in the primary? That's my understanding of it. How long did he spend in the primary? I believe it was two or three minutes, and then a total of about 10 minutes is what the courts. Right, but after a couple of minutes, he was already in the secondary. Correct, your honor. He already moved over into secondary. So how soon after that did he say, yes, okay. I know he was a bit resistant at first about the dog, but he did say, okay. Agent Clint's testimony, he said. We go with that. As your judge did. Correct, your honor. The judge did go with that, and that is within the first 10 minutes. The court's memorandum says that the detention was lawful for the 10 minutes, and so that's my understanding at that time. When did he testify he smelled, well, he testified he smelled marijuana at what point? During primary or not until secondary? Primary within 30 seconds, your honor. He smelled marijuana in primary within 30 seconds, and the judge believed that. And the judge believed that. Doesn't that take care of everything? Your honor, under the government's citation of Hoyle, the problem with that is whether it is a plausible explanation, because the judge cited to the fact that Mr. Creighton in his interview says I can smell burnt marijuana, or I smoked marijuana, which would have been burnt marijuana, not the fresh marijuana. That was found in the black bag, in a tied up plastic bag. So his testimony was that he smelled burnt marijuana. He said he smelled. Agent Hunt smelled fresh marijuana. Cesar Creighton admits to smoking marijuana in the vehicle. And there was a cross-examination about that. But everybody agrees that whether wrapped up or not wrapped up, there was fresh marijuana in the car? Yes, your honor. Okay. But still, once you smell marijuana, you have probable cause, and you can search closed containers in the vehicle. So you have to undermine the district court's finding that he smelled marijuana to prevail on the search, don't you? Your honor, I think the twist is that even under, and I think some of my cases were a little bit off, but California v. Acevedo, I think it's still there is, and the government raised this, but there still has to be control. The black bag was in the back. The court makes no findings that it was within his arms span or his control. That has nothing to do with the legality of the search, does it? That might have to do with whether he's guilty, but that has nothing to do with the validity of the search, whether he had control of it. He could have smelled marijuana. The officer could have smelled marijuana that was hidden in a compartment that the driver had no idea about. That doesn't eliminate the probable cause to search the car, does it? Search the car, your honor, but not the black bag that was in the back. The Supreme Court has said you can search. Once you have probable cause, search a car. You can search any closed container. We cited a case to the contrary, but that was overruled by the Supreme Court. I did, your honor, and I apologize for that, but I think there is a U.S. v. Knapp that goes out of the Tenth Circuit that discusses arm range in Arizona v. Gannett. I would ask for that cite to the court later. Thank you, your honor. Thank you, counsel. Thank you. Ms. Stahl. May it please the court. Good morning. My name is Joni Stahl. I'm an assistant United States attorney in Las Cruces, New Mexico, and the district court properly denied the motion to suppress. Creighton has not identified any clear error in the district court's factual findings. Also, the district court correctly allowed Agent Armour to testify as an expert at trial. There's no indication that the court views this discretion, and for those reasons, this court should refer in the lower court's decision. I must know. After Mr. Benjamin was tripping up Agent Armour on the stand and he wouldn't give him the basis for his expert opinions, did he ask the district court to strike his testimony on that basis? Your honor, as I recall, I was the trial attorney in this case, and as I recall, Mr. Benjamin repeatedly challenged Agent Armour's testimony as cumulative, but I'm not entirely sure that there was any challenge to his ability to testify as an expert based on his training and his experience. That was a bit unsatisfactory to me. Did he make a motion to strike? Not based on his credentials and experience, but on the substance of his testimony. As I recall, your honor, Mr. Benjamin tried to prevent Agent Armour from testifying as cumulative all the way leading up prior to trial and then through trial after Agent Nixon, who testified right before Agent Armour, but I don't recall an actual motion to strike the testimony following Agent Armour's. I think he reiterated his objection to the testimony being cumulative. All right. Thank you. So I plan to approach the first two arguments simultaneously because I think they're pretty closely tied. Mr. Creighton concedes that the initial detention was justified, but claims that the agent needed probable cause to extend the stop. That's contrary to the law. Agent Hunt could stop, briefly detain, question the defendant in this case without any individualized suspicion. But in this case, he had many factors that led to reasonable suspicion, including the fact that he noted that the car was the car. I understand why you're spending time on this. It's a slam dunk that if he smelled the marijuana to test, the only issue here is whether that was clear error to make that finding. Once the officer smells marijuana, is there any question that the search, including the search of the closed container in the car, is lawful? There isn't, Your Honor. You're absolutely right. There's really no argument. Once the agent smelled the marijuana, a fact 30 minutes, excuse me, 30 seconds into the stop, he had probable cause to search. And that was the entire car, including the closed containers under California versus Estavito. I'll move on. The other thing I would say just to that question is the real challenge that Mr. Benjamin asked today is the credibility finding. That's virtually unreviewable, and the district court found Agent Hunt's testimony credible. After he testified at this question hearing, he testified that he was, excuse me, the court found that he was consistent through direct, cross, redirect, and recross, and that that testimony was also consistent with the report that Agent Hunt had written over a year prior. So the credibility is what really takes him on the first question. So I'll just move to Agent Armour's expert testimony, unless the court has any other questions about the first two issues. So as to Agent Armour's testimony, the district court properly admitted that testimony, and there's no indication, and I don't even think Mr. Creighton has raised that there was any abuse of discretion here. The district court properly assessed the testimony that it involved specialized knowledge, that it was not readily accessible to the average person, that it would be helpful to the jury, that Agent Armour specifically had the training and experience that made his testimony reliable. Mr. Creighton had the opportunity to repeatedly challenge that testimony leading up to trial and during trial. The district court properly performed its gatekeeping role in even sustaining some of Mr. Benjamin's objections and limiting the testimony that Agent Armour gave after prior testimony came out from another agent. Agent Armour's testimony was limited as far as the scope. And then the court also gave a limiting instruction as to Mr. Agent Armour's testimony and the other agent that testified right before, these two agents that gave similar but not the same testimony. And this court has repeatedly approved this type of testimony in its admission at trial. It's helpful to a jury. Not every person understands what a personal use amount of drugs is or what a distributable amount is. So as I understood it, Mr. Benjamin was saying that Agent Armour was basically just saying what it was, that he provided no basis for how he reached the conclusion that it was more than personal use. Can you address that? Yes, Judge. I believe that slightly mischaracterizes the testimony. Agent Armour testified that he had been with DA for a number of years, that he had participated in investigations. He worked undercover. He had interviewed through proffers and debriefs and those kinds of encounters, that he had interviewed a number of traffickers and including specific testimony that he interviewed traffickers who also were personal users. And that I think is particularly important to this case because I don't think there's any argument that Mr. Creighton's also a user. But Agent Armour's testimony was specifically that this amount of drugs is in his experience and his training. After investigating, I think he testified over a hundred, I believe the statement he made was hundreds of cases involving distribution amounts, that this amount is consistent with distribution. He made no testimony about Mr. Creighton's specific mental state, but this amount is consistent. And he didn't stop there. Did he also say that the amount was consistent with personal use? I believe that on cross-examination, Mr. Benjamin asked Agent Armour, I'm trying to recall exactly, I believe the question was asked, could it also be consistent with personal use? And I believe the response, and I think through the record, Agent Armour's testimony has been consistent that that amount also with the way that the drugs were packaged, the fact that there was a large amount of cash found, the fact that this defendant had four cell phones, all those things taken together are indicative of transfer. Specifically with just with respect to the amount, did he not say that it was consistent? That a user might just carry five or, I guess it was more than five grams. Your Honor, it was 47 grams. And Agent Armour specifically testified that it was not consistent with his experience, that that would be a personal use amount. That amount, regardless of the packaging and the cell phones and all. Correct. And that's kind of when, I believe it was on direct testimony, when he got into this kind of anecdotal story about drugs, excuse me, about an alcohol abuser might not buy in bulk. If it were me, I would give the example of like Oreos. I wouldn't buy in bulk and then try to ration myself. But that can kind of be tossed aside into the fact that he testified specifically, and again, on cross, that in his training and experience, the amount without all the other factors that are present here is not consistent with personal use. At some level, do you understand Mr. Benjamin's argument to be that Agent Armour wasn't credible? I understand that today, Your Honor. I don't believe that that has been raised prior to today. And I don't think there was any objection to his credibility after he testified. Well, I think you also said that he did not challenge the, under the test for expert witness testimony, he didn't challenge the methodology, did he? No, Your Honor. So as far as what we have before the court, absent some definite firm conviction of the district court was clearly erroneous in allowing Agent Hunt to testify as an expert. I think that despite Mr. Benjamin's representations, I don't think he wins on any of the arguments. There's no evidence in this report abuses discretion by admitting this testimony as well within what this court has allowed in past cases. I still have a little bit of time. Let me ask a question. Did an agent, apparently some of, or maybe most of the marijuana, was stored in a container. And Mr. Benjamin alluded to the possibility that the defendant didn't know it was there. Was there any expert testimony to the, on the issue of whether he would know that the drug was in the car? Well, the testimony that came out at trial was that Mr. Creighton claimed the black bag as his, all of the drugs were within that black bag. Some were in a container inside the black bag and then some were in baggies. Some of the drugs were in baggies outside of the container, but within the black bag. But was there any expert testimony that he would know that the drug was there? No. The reason I'm asking is just in the last few days, the Supreme court granted cert on that type of expert testimony. There's nothing of that nature in this case. And it hasn't been challenged. Is that right? Correct. Your honor. And I did review that case because I was concerned when I saw it, it's totally, it doesn't touch on any of the issues that were raised in this case. It's completely different back situation. So unless the court has other questions for me, I would just urge the court to affirm the district court's rulings. Thank you. Counsel cases submitted in council are excused. Thank you. You're always ahead of me. I don't know what's been granted on. We'll now take our next case for this morning. Us versus Mario Gonzalez. 22 dash 21, 23.